UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDMONIA A.,

             Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00572 EAW

## <u>INTRODUCTION</u>

      Represented by counsel, plaintiff Edmonia A. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

      Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Dkt. 7; Dkt. 8).  For the reasons discussed below, Plaintiff's motion (Dkt. 7) is granted to the extent that this matter is remanded for further administrative proceedings.  The Commissioner's motion for judgment on the pleadings (Dkt. 8) is denied.

## BACKGROUND

Plaintiff filed her application for SSI on June 24, 2019.  (Dkt. 6 at 150, 247).[1]  In her application, Plaintiff alleged disability beginning December 1, 2017.  (*Id.* at 248). Plaintiff's application was initially denied on September 10, 2019 (*id*. at 166), and denied upon reconsideration on December 19, 2019 (*id.* at 181).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger on July 29, 2020.  (*Id.* at 50-69; *see id.* at 193).  On August 27, 2020, the ALJ issued an unfavorable decision.  (*Id.* at 31-45).  Plaintiff requested Appeals Council review, and her request was denied on March 29, 2021, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment ("Listing") in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 19, 2019, the application date.  (Dkt. 6 at 36).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: peripheral neuropathy; degenerative disc disease of the cervical and lumbar spine, status post cervical discectomy and fusion surgery and lumbar radiculopathy; asthma; left wrist fracture; and left wrist DeQuervain's tenosynovitis.  (*Id.* at 37).  The ALJ further found that Plaintiff's medically determinable impairments of eczema, hypothyroidism, obesity, anxiety, and depression were non-severe.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 38-39).  The ALJ particularly considered the criteria of Listings 1.02, 1.04, 3.03 and 11.14 in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional limitations:

> [Plaintiff] can have occasional use of ramps and stairs, occasional use of ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching and crawling.  She can have occasional exposure to humidity and wetness; occasional exposure to dust, odors, fumes and pulmonary irritants; occasional exposure to extreme cold and extreme heat.  She can do occasional handling, fingering and feeling with the left, dominant hand.

(Dkt. 6 at 39).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 44).  At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the

representative occupations of usher, school bus monitor, and furniture rental clerk.  (*Id.* at 44-45).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 45).

## II.   <u>Remand of this Matter for Further Proceedings is Necessary</u>

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that: (1) the ALJ did not explain how the postural limitations assessed in the RFC accommodate the marked restriction in Plaintiff's ability to move her head identified by consultative examiner Dr. John Schwab; and (2) the ALJ did not consider Plaintiff's depression and anxiety in making the RFC determination. (Dkt. 8-1 at 13-20).  As further explained below, the Court agrees that remand for further proceedings is necessary.

### A.   <u>Remand for Further Proceedings is Warranted</u>

Plaintiff argues that the ALJ has not explained how the postural limitations assessed in the RFC accommodate the "marked restriction" in Plaintiff's ability to move her head in any direction as opined by Dr. Schwab.  (Dkt. 7-1 at 13-18 (citing Dkt. 6 at 457)).  The Commissioner argues that the postural limitations accommodate Plaintiff's neck condition, the ALJ's determination was consistent with the record as a whole, and the record supports the ALJ's findings.  (Dkt. 8 at 11-15).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.*  However,

an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).

> In other words: An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

On August 21, 2019, Plaintiff underwent a consultative examination by Dr. Schwab. (Dkt. 6 at 454-58).  Relevant to this Decision and Order, Plaintiff experienced neck pain, and Dr. Schwab opined that Plaintiff "has a marked restriction in moving her head in any direction[,]" which the ALJ noted in the hearing decision.  (*Id.* at 41 (citing *id.* at 457)). The ALJ further detailed that after the consultative examination, Plaintiff "failed earlier treatment" relative to this issue "including physical therapy[,]" and Plaintiff "underwent a C4-5 anterior cervical discectomy and fusion due to noted C4-5 stenosis on September 14, 2019." (*Id.* at 41).  Following surgery, Plaintiff's symptoms were alleviated for "one and one-half months".  (*Id.*).  However, symptoms recurred and "physical therapy had not been helpful." (*Id.*).

The ALJ found Dr. Schwab's opinion "partially persuasive" and "overall supported by the evidence of record and supported, though it is expressed in somewhat vague terms, relative to the claimant's neck. . . ." (*Id.* at 43).  In the RFC, the ALJ limited the Plaintiff to "occasionally balancing, stooping, kneeling, crouching and crawling" (*id.* at 39), determining that, "the limitation to light [work] with occasional postural maneuvers, accommodates [Plaintiff's neck] impairment." (*Id.* at 43).

Plaintiff argues, and the Court agrees, that the ALJ has not provided a meaningful rationale for his determination that Dr. Schwab's assessment of Plaintiff's neck-related limitations is consistent with the assessed RFC. (*See* Dkt. 7-1 at 16-18). Although the ALJ found Dr. Schwab's opinion "partially persuasive[,]" and indicated that Dr. Schwab's opinion "was proffered in advance of [Plaintiff's] surgical intervention," the ALJ did not indicate that he rejected any part of Dr. Schwab's opinion or any evidence on which he alternatively relied in assessing the identified marked limitation in Plaintiff's neck movement. (*Id.* at 43)  Rather, the ALJ stated that although the restrictions regarding Plaintiff's neck were "expressed in somewhat vague terms," Dr. Schwab's opinion was nonetheless "supported . . . relative to claimant's neck[.]" (*Id.*).  In other words, the ALJ accepted Dr. Schwab's opinion that Plaintiff had a marked limitation in moving her head in any direction, but then concluded without explanation that such limitation was accommodated by a restriction to light work with occasional balancing, stooping, kneeling, crouching, and crawling.

The ALJ's failure to provide any explanation for this determination leaves the Court unable to conclude that it was supported by substantial evidence.  Numerous courts in this

Circuit have held "that a physician's assessment that a plaintiff has 'marked' limitations is not necessarily consistent with an RFC limiting the Plaintiff to 'occasionally' performing those same activities." *Buczynski v. Comm'r of Soc. Sec.*, No. 1:17-CV-01126-MAT, 2019 WL 5540880, at *4 (W.D.N.Y. Oct. 28, 2019) (collecting cases). In this context, "occasionally" means up to one-third of a workday, and it is not the case that an individual may always spend one-third of her day performing an activity in which she is markedly limited. *See Edwards v. Commissioner*, No. 16-cv-0948-MJR, 2018 WL 5859518, at *5 (W.D.N.Y. Nov. 9, 2018) ("The Social Security Regulations define 'occasionally' as 'occurring from very little up to one-third of the time.' The ALJ does not explain how a marked limitation would allow plaintiff to spend up to one-third of his work day climbing stairs.") (citation omitted). Accordingly, where an ALJ finds a marked limitation in a particular activity nevertheless permits that activity to be performed occasionally, it is incumbent on the ALJ to explain that conclusion in a manner that allows for meaningful judicial review. *See Buczynski*, 2019 WL 5540880, at *4 ("[T]he written determination does not include any explanation as to how limiting Plaintiff to occasionally using his right arm/hand is consistent with Dr. Balderman's opinion that Plaintiff had marked limitations for performing those same activities. Without this additional information, the Court is unable to discern how the ALJ arrived at his conclusion that the RFC is supported by Dr. Balderman's opinion, and therefore whether the RFC is supported by substantial evidence.").

Here, the ALJ found that a marked limitation in moving one's head in any direction was consistent with an RFC for light work with occasional postural maneuvers. Crucially,

the ALJ did not point to any evidence on which he relied in determining that the limitation assessed in the RFC for "occasionally balancing, stooping, kneeling, crouching and crawling" accommodates Plaintiff's marked restriction in moving her head in any direction.

Nor is the Court able to discern the basis for the ALJ's determination by looking to the other evidence on which he relied.  In addition to Dr. Schwab's medical opinion, the ALJ considered the medical opinions of state agency medical consultant Dr. Gary Ehlert and Plaintiff's primary care physician Dr. William Blymire, noting that both doctors' opinions were "somewhat persuasive" as they were "somewhat supported by the evidence of record".  (*Id.* at 43).  However, the ALJ expressly concluded that these opinions were "not consistent with Dr. Schwab's assessment who examined the claimant," and discounted them on that basis.  (*Id.*).  It is thus apparent that the ALJ did not rely on these medical opinions in reaching his opinion relative to Plaintiff's ability to move her head, and the hearing decision makes no reference to findings challenging Dr. Schwab's opinion regarding Plaintiff's neck pain or movement restriction.

"An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).  In other words, although an RFC need not track any medical opinion, "[i]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 237

(W.D.N.Y. 2019) (citation omitted) (second and third alterations in original); *see also Smith v. Comm'r of Soc. Sec.*, No. 19-CV-6194-LJV, 2020 WL 4904956, at *3 (W.D.N.Y. Aug. 19, 2020) (remanding where medical opinion found plaintiff was "moderately to markedly limited in standing, walking, lifting, or carrying, . . . but the ALJ did not explain how that led him to conclude that [plaintiff] could lift [and] carry . . . ten pounds frequently and twenty pounds occasionally, let alone occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl." (citations and internal quotation marks omitted)).

Here, it is neither clear from the hearing decision nor apparent from the evidence of record what evidence, if any, supports the assessed limitation of "occasionally balancing, stooping, kneeling, crouching and crawling" with regard to Plaintiff's marked restriction in moving her head.  (Dkt. 6 at 39).  Because the ALJ did not build the necessary logical connection based upon the evidence of record, the Court cannot discern from the ALJ's decision the extent to which the assessed limitation is supported by substantial evidence. As a result, the Court is unable to meaningfully review the basis for the ALJ's findings, and remands this matter for further administrative proceedings.  *See Michelle J. v. Comm'r of Soc. Sec.*, No. 20-CV-01834, 2022 WL 17540647, at *4 (W.D.N.Y. Dec. 8, 2022) ("The ALJ's failure to reconcile the RFC with the opinion he found somewhat persuasive frustrates meaningful review and remand is warranted.").

## B.   <u>Remaining Argument</u>

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for

further administrative proceedings is necessary, the Court declines to reach this argument. *See, e.g.*, *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is denied, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is granted to the extent that this matter is remanded for further administrative proceedings. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     January 27, 2023
           Rochester, New York